1  William W. Palmer, Esq. (SBN 146404)
2  PALMER LAW GROUP, a PLC
   2443 Fair Oaks Blvd., No. 545
3  Sacramento, California 95825
4  Telephone: (916) 972-0761
   Facsimile:  (916) 917-5397
5  Email: wpalmer@palmercorp.com

6

7  *Attorneys for plaintiff Axial Manufacturing, Inc.*

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  AXIAL MANUFACTURING, INC., | Case No.: |
| 11 | |
| 12        Plaintiff, | <u>COMPLAINT FOR DAMAGES</u>: |
| 13 | 1. Conversion; |
| 14     vs. | 2. Fraud; |
| 15 | 3. Unjust Enrichment; |
| 16  CHARLES VINCE OROZCO; WRIGLEY | 4. Declaratory Judgment Re: Ownership of Trademark; |
| 17  CORALES; CYNTHIA AQUINO, | 5. Cyberpiracy Pursuant to 15 U.S. Code § 1125(d); |
| 18 | 6. Dilution of Famous Mark Pursuant to 15 U.S. Code § 1125(c); |
| 19        Defendants. | 7. False Designation of Origin Pursuant to 15 U.S. Code § 1125(a); |
| 20 | 8. Infringement of California Common Law Trademark; |
| 21 | |
| 22 | 9. Intentional Interference With Prospective Economic Advantage; |
| 23 | 10. Conversion With Damages Pursuant to Cal. Penal Code § 496(c); |
| 24 | |
| 25 | DEMAND FOR JURY TRIAL |
| 26 | |
| 27 | |
| 28 | |

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545, Sacramento, California 95825
Telephone: (916) 972-0761

COMPLAINT FOR DAMAGES

Plaintiff Axial Manufacturing, Inc., (hereafter, "Axial" or "Plaintiff") alleges for its Complaint against defendants Wrigley Corales ("Corales"), Cynthia Aquino ("Acquino"), and Charles Vince Orozco ("Orozco") (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant 28 U.S.C. 1331 because this action alleges violations of federal statutes, including the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(a)-(d).

2.      This Court has jurisdiction to render declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

4.      This Court has pendant and supplemental jurisdiction over the other state law claims asserted herein pursuant to 28 U.S.C. § 1367.

## PARTIES

5.      Plaintiff Axial Manufacturing, Inc., is a California corporation headquartered in Anaheim, California, and the owner of the AL13 trademark, as US Registration No. 4569635 ("'635 Registration") and U.S. Serial No. 97699342 ("'342 Mark").

6.      Defendant Charles Vince Orozco resides in Stanton, California, and was an at-will employee employed as a Production/Shop Manager of Axial during the period running from April 12, 2017 to November 25, 2023.

7.      Defendant Wrigley Corrales resides in Anaheim, California, and was an at-will employee as a nominal CAM programmer of Axial during the period running from roughly September 2015 through November 17, 2023.

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

8.      Defendant Cynthia Aquino resides in Westminster, California. and was an at-will employee of Axial during the period running from March 2, 2017, to November 27, 2023.

**GENERAL ALLEGATIONS**

9.      Darwin Wongkar ("Darwin" or "Decedent") was the 100% owner of Axial Manufacturing, Inc. ("Axial") and passed away on August 20, 2022.  Axial originated on or about September 24, 2015, under the name Verstrasse Group, LLC ("Verstrasse").  In or about January 2017, Verstrasse was rebranded to Axial.  Axial manufactures luxury wheels for the car industry.  Darwin passed away at the age of 40 and left one child (age 11 at the time) as his sole beneficiary who is presently under court-ordered guardianship. Darwin's estate has been filed with the Orange County Probate Court as *Estate of Darwin Wongkar*, Orange County Superior (Probate) Court Case No. 30-2022-01282326-PR-LA-CMC (hereafter, "Estate").

10.      On September 27, 2022, the Probate Court appointed professional fiduciary Rob Saslow ("Mr. Saslow") as Administrator, who unexpectedly passed away on August 3, 2023.  The Probate Court next appointed Rick R. Emmett as the Special Administrator on September 23, 2023, and the General Administrator on November 8, 2023 ("Administrator").

11.      Darwin hired defendant Corales as an at-will employee when Verstrasse began its operations.  As Axial grew, Darwin hired more employees to assist with the production of his company's luxury wheels.  During the spring of 2016, at-will employee Julian Jake Uy ("Jake") was hired to work for Axial and assisted Darwin with growing Axial and developing the AL13 brand.  When Jake began working at Axial, he first learned of Darwin's AL13 brand.  Darwin created his AL13 brand as a design to enable smaller dealers to sell their wheels under their given brand name without the investment of an on-site machine shop.  Axial and Darwin solely invested all of the funds during the development of the AL13 brand.

Defendants were at-will employees who invested nothing in the AL13 brand and held no ownership interest in Axial at any time.

12. In early 2017, when Axial was rebranded and moved to a larger production facility. Shortly before Darwin's passing, Darwin began marketing Axial for sale. At his sole discretion, Darwin wished to reward two loyal employees Jake and Defendant Corales, who had helped grow Axial and its AL13 brand. Darwin found two potential purchasers of Axial prior to his death. Darwin told Defendant Corales and Jake that if Axial was sold to either of the two potential purchasers, then the two at-will employees (Defendant Corales and Jake) would receive ten percent (10%) of the net sale of Axial. However, no terms were ever consummated, and the sale of Axial never finalized.

13. At no time did Darwin state that his brand AL13 was ever designed by any other employee, including Defendants Corales, Orozco, and Acquino. Darwin worked tirelessly on designing, marketing, and manufacturing the AL13 brand which was openly displayed as his property. Defendant Corales was only employed as a nominal "CAM [Computer Aided Manufacturing] programmer," which is someone who creates models, technical drawings, and designs using Computer Aided Design tools, and performs testing, simulations, and troubleshooting. Defendant Corales was never part of the designing or marketing of Axial's AL13 brand. Defendant Corales made no investment in the AL13 brand whatsoever and his skill set within the wheel industry is limited.

14. After Darwin's passing, Darwin's family began asking Axial's employees questions and expressed concerns about protecting Darwin's AL13 brand. Jake was initially tasked by the Administrator of the Estate with handling Axial's finances and addressing all the executive aspects of Axial. Jake reviewed the AL13 brand and determined that Darwin had never trademarked his brand.

15. In or about November 2022, key Axial employees also became very

COMPLAINT FOR DAMAGES

concerned with the family members about protecting Axial and the AL13 brand. Since there was no record of Axial or Darwin protecting the AL13 brand, Defendant Corales filed the AL13 trademark application under his own name. Corales designated the AL13 brand to Axial's corporate address and included Corales' Axial email and physical address, and all Trademark costs were paid by Axial.  All the work done on the trademarking was performed on Axial's time and cost.

16.     However, Defendants had other plans to destroy Axial and to steal the AL13 brand and all the other assets of Axial for themselves and for their own financial benefit.  On or about November 17, 2023, Plaintiff discovered that these three at-will employees Defendants Orozco, Corales, and Aquino were in sale discussions with WheelImage Corporation ("WheelImage") and had decided on their own, and without any authorization, to steal the assets of Axial and to sell them to WheelImage's owners Dave Batarseh.  The three employee Defendants (Orozco, Corales, and Acquino), concluded negotiations with Dave Batarseh, a junior, partial owner of WheelImage, to pirate the assets of Axial.  The three Defendants knew Axial to be in a vulnerable state because of the death of Darwin, the ongoing Probate, and the little 11-year-old girl as the sole shareholder.  Dave Batarseh, his father Adel Batarseh, and WheelImage are the well-known "bad actors" within the luxury wheel industry.  Dave Batarseh is known for his litigious nature, low moral standards, and poor credit.  For this reason, WheelImage and Batarseh have become isolated within the industry, so that the only way for them to acquire the assets of Axial was not through a legitimate purchase, but by theft.

17.     The three Defendants openly discussed their scheme on November 16, 2023, with Jake Uy as they drove to the Estate Administrator Rick Emmett's office. The three employees did not tell the Administrator about their scheme, which was criminally illegal and actionable on many levels.  *See*, *e*.g., *Courtesy Temporary Service, Inc. v. Camacho* (1990) 222 CA3d 1278, 1290 (Employees used their

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0561

4

1    employer's customers lists to set up a competing business and it is immaterial

2    whether the lists were protectible as trade secrets).

3        18.    On the next day, November 17, 2023, Defendant Corales with the

4    assistance of attorney Jack I. Jmaev, counsel for Dave Batarseh and WheelImage,

5    assigned all the rights of Axial's AL13 brand to WheelImage.  The Defendants had

6    no authority to do so; Axial was and is under court appointed oversight of the Orange

7    County Probate Court.  Attorney Jmaev was well aware that Axial was represented

8    by counsel and that Defendant Corales was an at-will employee at Axial.  California

9    Rules of Professional Conduct, Rule 4.2 Communication with a Represented Person

10   (a),(b)(2)[1] requires a current employee, member, agent, or other constituent of the

11   organization, if the subject of the communication is any act or omission of such

12   person in connection with the matter which may be binding upon or imputed to the

13   organization for purposes of civil or criminal liability.  Again, neither Administrator

14   Emmett nor the Estate's attorney Loren J. Castro were told of these actions by

15   attorney Jack I. Jmaev and/or the three Defendants - employees Orozco, Corales,

16   and Aquino.  During this period the Defendants (Orozco, Corales, and Acquino)

17   engaged in the following criminal conduct which included, but is not limited to the

18   following:

19   _____

20   [1] California Rules of Professional Conduct, Rule 4.2, entitled "Communication with
     a Represented Person," states in pertinent part: (a) In representing a client, a lawyer
21   shall not communicate directly or indirectly about the subject of the representation
     with a person the lawyer knows to be represented by another lawyer in the matter,
22   unless the lawyer has the consent of the other lawyer; (b) states in pertinent part: (b)
     In the case of a represented corporation, partnership, association, or other private or
23   governmental organization, this rule prohibits communications with: (1) A current
     officer, director, partner, or managing agent of the organization; or (2) A current
24   employee, member, agent, or other constituent of the organization, if the subject of
     the communication is any act or omission of such person in connection with the
25   matter which may be binding upon or imputed to the organization for purposes of
26   civil or criminal liability.

27

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0761

(a.) Defendant Corales hacked into Decedent's computer on October 25, 2023, in order to steal the website and Instagram accounts. *See* Exhibit A – email dated October 25, 2023, at 7:42 a.m. in which Defendant Corales tries to coerce the website company to reset all passwords; however, the company noted that Corales sent in his own driver's license and not the Decedent, Darwin Wongkar, who is listed as the owner of the website.

(b.) Defendants organized a pizza party with Dave Batarseh in the deceased owner Darwin's office as a show of open contempt and in an effort to recruit and to lure away Axial's entire workforce of employees without the knowledge of the Administrator Emmett of Estate Counsel Loren Castro. *See* Exhibit B – still photo taken from Axial surveillance video of Dave Barteseh's pizza party at the Axial company offices.

(c.) Theft of confidential employee files, pricing and customer lists. *See* Exhibit C – email thread from Defendant Acquino to Matt Thomas (Vice President of Sales for Axial) requesting Matt to "highlight your dealers/customers," which Defendant Acquino forwards to Dave Batarseh at 9:43 p.m. on November 20, 2023.

(d.) Dave Batarseh effort to steal the password to Axial's Instagram account with over 400,000 followers on November 20, 2023. *See* Exhibit D – texts dated November 20, 2023, in which Batarseh demands the login details, however, when met with resistance threatens "Ok let's play that game."

(e.) Defendants spent over an hour (based on Axial surveillance tapes) shredding and destroying the Axial business files including personal medical records on the night of November 22,

6

COMPLAINT FOR DAMAGES

2023.  *See* Exhibit E – still photo of Defendant Aquino hunched over the shredding machine for one hour.

(f.)   Defendants attempted to steal the '342 Mark from Axial with Defendant Corales executing a fraudulent conveyance to Dave Batarseh.

(g.)   Defendants stole equipment, such as drill sets, customer and pricing lists, etc., eventually, the guts and values of Axial.

19.   On November 20, 2023, Administrator Emmett had warned Defendants that "All physical/tangible and intellectual property of the Company will be secured and safeguarded as assets of the Company including but not limited to programming, designs, tooling, fixtures, customer lists, Instagram, website, email, Dropbox, and AL13 trademark (regardless of applicant)."  Defendants ignored and altogether disregarded and otherwise ignored Administrator Emmett's instructions, and committed the above-outlined nefarious acts and then left their positions at Axial whereupon they migrated down the street to WheelImage

20.   WheelImage's owner Dave Batarseh had trespassed onto Axial's manufacturing shop property where he told the Axial employees that he had "purchased" Axial's assets and its AL13 brand.  Dave Batarseh passed out employment applications (with non-compete clauses) to the Axial employees which were coupled with his threats that Axial was going to be shut down and Axial's employees would lose their jobs.  (*See* Exhibit F - picture of WheelImage Employment Application.)  Without any authorization by the Administrator or the Judge in the Probate Court.  The video surveillance depicts a pompous Dave Batarseh entering the Axial offices and ordering with the active assistance of Defendants, the Axial employees were to provide Batarseh with the detailed financial records of Axial.  At points, the young, pampered Dave Batarseh threatened to sue and to destroy Axial employees who refused to cooperate with him and his

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0501

7

scheme, to the detriment of the Estate and is sole heir and beneficiary, and 11-year-old little girl.

21.    Defendants were well aware that Administrator Emmett was in the process of marshalling the assets of the Estate and had already successfully negotiated and renewed a letter of intent ("LOI") for the sale of Axial that originated on or about July 28, 2023, with Nik Saran and VF Engineering (which was revised and reaffirmed in early November 2023).  Attorney Jack Jmaev and Defendants decided that the LOI was not in their personal best interests, and they would do better to steal all the key Axial assets and to sell or fence them to WheelImage.  Emails, videotape, and texts, document the plot, some of which are attached hereto as Exhibits A, C, D, H.

22.    The Administrator was unaware that these three "at-will" employees - Defendants Orozco, Corales, and Aquino - had begun marketing the sale of Axial and its AL13 brand without his or the Estate attorney's knowledge.  With no authorization whatsoever from the Administrator or the Probate Court, the three at-will employee Defendants sold and otherwise diverted the Axial assets to Dave Batarseh, junior owner of WheelImage, including, but not limited to: the AL13 brand, Axial's confidential lists of customers and vendors, pricing index, accounts receivable ("AR"), certain manufacturing equipment, a computer with all of the Axial confidential business information, the Instagram account with 400,000+ (in November 2023, currently the Instagram account has over 480,000) followers, the Axial website, and other valuable property, which is currently unknown. Surveillance videos reveal WheelImage's junior owner Dave Batarseh strolling through the Axial offices and accessing confidential information with the assistance of Defendants Orozco, Corales, and Aquino.

23.    As alleged earlier, without the authorization of the Administrator or the Probate Court, at-will employee Defendant Corales filed for a Trademark on Axial's

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

COMPLAINT FOR DAMAGES

AL13 brand as '342 Mark on December 1, 2022, during normal business hours, using Axial's company address and email which was paid for with Axial funds. Attorney Castro for the Estate directly questioned employee Corales as to why he would take such an action, unilaterally. Defendant Corales explained in a written email that the reason he took this action was not because Corales owned any interest in trademark '342 Mark, but because:

> "Prior to Darwin's passing there was another sales guy employed with us, Hadrian Suciu, that we had to let to [sic] to around in September last year during Saslow's management. Saslow knows about the situation. We later found our Hadrian's intentions towards the business/brand was not good so I did what I thought would be protecting the brand and that was by trademarking it. He is now a competitor to us by copying the brand designs, image, and approaching dealers. In hindsight, I did what I thought was necessary at the time to keep the company protected and going."

*See* Exhibit G – true and correct copy of email thread between Corales and attorney Castro, dated August 16, 2023, at 4:02 p.m.

24.    Notably, at no time did Defendant Corales assert that he owned the AL13 Trademark '342 Mark to either Administrator Emmett or attorney Castro or in his email to attorney Castro (Exh. G), nor did Corales later assert or file a claim against this Estate. Corales was only employed to develop machining for the AL13 brand owned by Axial. Further, on February 8, 2024, Axial purchased the senior AL13 Trademark '635 Registration. (*See* Exhibit H.) The purchase of Trademark '635 Registration includes all the claims and causes of action against any person or business entity that accrued for the unauthorized use of the '635 Registration, which encompasses Defendants' unauthorized use the '635 Registration and efforts to seize the trademark with a competing trademark.

25.    Defendant Corales, while still employed "at will" by Axial, and once again without the knowledge or consent of either the Administrator, the Estate's counsel, or the Probate Court, next transferred the '342 Mark to Dave Batarseh of

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0564

WheelImage with the assistance of attorney Jack I. Jmaev on November 17, 2023. This was done despite the fact that the Estate's counsel and the Administrator had already spoken with Corales, who was directly told and aware that he had no authority or ownership rights whatsoever in any of the assets of Axial or the AL13 brand. The Administrator warned Defendants in advance not to engage in the specific criminal acts which they later undertook. *See* Exhibit I - email from Administrator Emmett dated November 20, 2023.

26. Defendant Corales never owned the AL13 brand and the '342 Mark, which was solely owned by Axial, and had been filed to "to keep the company protected and going." *See* Exhibit G - Defendant Corales explanation for filing the '342 Mark. Defendants certainly never owned the senior '635 Registration, which were later purchased by Axial on February 8, 2024. Trademark '635 Registration specifically covers "Air pumps for two-wheeled motor vehicles or bicycles; Tire inflators; Wheel hubs; Wheel rims." *See* Exhibit J - Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9 dated May 13, 2024. On September 15, 2023, the United States Patent and Trademark Office ("USPTO") issued a Denial Letter against the '342 Mark which Corales had filed purportedly on behalf of Axial. *See* Exhibit K - USPTO Denial Letter. And on May 14, 2024, the USPTO issued a Suspension Notice on the ''342 Mark. *See* Exhibit L.

27. Defendants never asserted control over the brand AL13, never maintained it as a separate business entity, held a separate bank account, or received any additional remuneration for the AL13 brand from Axial. Axial paid for all work involving the development of the AL13 brand, including the Instagram account, website, logo, trade shows, employee salaries, and company operations, etc. Axial now owns both the Senior '635 Registration and the Junior '342 Mark.

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 673-9768

COMPLAINT FOR DAMAGES

28.    Defendants developed nothing and held title to nothing at Axial, which was under the protection licensed fiduciary Administrator Emmett who was appointed by the Probate Court to protect the Estate, its creditors and the sole heir (an 11-year-old little girl), so that they had nothing to convey to WheelImage or its junior owner Dave Batarseh.  Defendants were at-will employees of Axial and therefore even if they had developed a product or image on employee time, then that property belonged to their employer Axial.[2]  It is well-known within the industry that Defendant Corales lacks the necessary skill and business acumen and background to develop AL13, which was the brainchild of respected Darwin Wongkar; rather, Defendant Corales was employed as nothing more than a CAM programmer, as the industry well knows.

29.    Based on information and belief, Defendants were paid nominal sums of money by Dave Batarseh and the failing WheelImage for the successful AL13 brand owned by Axial.

30.    Defendants Orozco, Corales, and Dave Batarseh invited and attempted to entice and to lure Axial employees to work for WheelImage.  Dave Batarseh even began distributing WheelImage employment applications (with non-competition agreements) to the Axial employees.  Based on information and belief, at one meeting, which occurred on or about November 15, 2023, Defendants supplied WheelImage with confidential and proprietary information about Axial's manufacturing and its AL13's brand.  But the vast majority of the Axial employees did not take the bait from the young Dave Batarseh primarily because of Batarseh's bad reputation for dishonesty within the industry.  They all knew that Batarseh was

---

[2] The significance of the three employees Corales, Aquino, and Orozoco's at-will employment is that the employer Axial owns their work product and inventions. (*See*, *e.g*., Cal. Labor Code § 2870 [entitled Employment Relations, Article 3.5 Inventions Made by an Employee].)

COMPLAINT FOR DAMAGES

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

attempting to steal the inheritance of an 11-year-old little girl who had just lost her father Darwin Wongkar. The loyal Axial employees stood firmly against Batarseh and Defendants. The young Batarseh later began issuing childish threats and filing frivolous lawsuits against several of the Axial employees in yet another effort to destroy Axial and to eat away at the assets of the Estate and its sole heir – a little girl.

31.     Defendants have engaged in activity to destroy the Axial company and its proprietary brands, including supplying WheelImage with Axial's customer base (including all confidential personal information on each customer), engaging in distributing confidential financial information to WheelImage, and has continued to erode the company Axial.

## **FIRST CLAIM FOR RELIEF**

### **(For Conversion Against All Defendants)**

32.     Plaintiff realleges and incorporates by reference paragraphs 1 through 31, inclusive, as though set forth fully herein.

33.     Defendants have willfully interfered with Axial's rights to its personal property. Defendants willfully interfered through a fraudulent scheme involving the purchase of Axial's AL13 brand, its customer base, and accounts receivable, with full knowledge that Defendants would profit personally, thereby stealing profits owed to Axial.

34.     Defendants have wrongfully retained dominion and control over Axial's business property, including Axial's AL13 brand.

35.     Defendants' intentional and deceitful acts enabled them to dispose of the property in a manner inconsistent with Axial's property rights. These property rights include the brand AL13 created by Axial.

36.     Defendants' unauthorized sale and transfer of Axial's AL13 brand caused substantial damages to Axial.

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

37.     As a result of Defendants' acts of conversion, Plaintiff has been damaged in a sum to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

38.     At all times mentioned herein, Defendants acted willfully with the wrongful intention of injuring Plaintiff and for an improper and evil motive amounting to malice in that the afore-referenced conduct was intentionally committed by Defendants that was knowingly oppressive, malicious, and wanton with the intended purpose to cause harm to Plaintiff.  Plaintiff is entitled to recover punitive damages from Defendants.

## **SECOND CLAIM FOR RELIEF**

### **(For Fraud Against All Defendants)**

39.     Plaintiff realleges and incorporates by reference paragraphs 1 through 38, inclusive, as though set forth fully herein.

40.     Defendants Corales, Orozco, and Acquino misrepresented to WheelImage that Axial's brand AL13 was wholly owned by Corales, and the three Defendants collectively who profited from the sale of Axial's AL13 brand.

41.     Defendants Corales, Orozco, and Aquino are charged with fraudulent activity by providing WheelImage confidential information on accounts receivable, sales reports, vendor lists, etc.

42.     Defendants could have prevented the destruction of Axial by not engaging and negotiating the sale of Axial's assets and its AL13 brand to Dave Batarseh and WheelImage.  Defendants intended to induce WheelImage to rely on their misrepresentations.  Defendants knew that by stating that Axial's AL13 brand was for sale by Corales, thus destroying the key Axial asset.

43.     Axial has been substantially harmed by Defendants misrepresentations to WheelImage that they had authority to sell or distribute proprietary property wholly owned by Axial.

13

COMPLAINT FOR DAMAGES

44.     Plaintiff further alleges that Defendants' conduct has been committed in callous disregard of Plaintiff's interests, and with intent to injure and cause harm to Plaintiff.  The facts alleged herein demonstrate that Defendants' conduct was despicable, as defined in California Code of Civil Procedure section 3294. Therefore, Plaintiff is entitled to recover punitive damages in an amount appropriate to punish or to set an example of Defendants.

**THIRD CLAIM FOR RELIEF**

**(For Unjust Enrichment Against All Defendants)**

45.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44, inclusive, as though set forth fully herein.

46.     Plaintiff has been substantially harmed by Defendants' actions and misrepresentations that Defendants owned the Axial assets and AL13 Brand and misrepresented that the Defendants had the authority to sell Axial's brand AL13 after the death of Axial's sole shareholder.

47.     Defendants have received the benefit financially by stealing and selling Axial's AL13 brand and the Estate's assets.

48.     Defendants have been unjustly enriched and, therefore, it would be inequitable for Defendants to be allowed to retain the benefits of Plaintiff's products and its AL13 brand.

49.     Defendants have gained financial benefits from the misrepresentations to WheelImage that the AL13 brand of Axial was owned by the Defendants and resulted in their unlawful and inequitable conduct by selling and receiving payment for Axial's assets and its AL13 brand.

50.     Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct by Defendants.  Plaintiff is entitled to equitable relief including restitution and/or disgorgement of all money received, profits, compensation, and benefits which may have been obtained by Defendants as a result

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 673-0054

1  of such enrichment.

2  <u>**FOURTH CLAIM FOR RELIEF**</u>

3  **(For Declaratory Judgment Re: Ownership of Axial Property, Including The**

4  **AL13 Trademark)**

5       51.    Plaintiff Axial incorporates by reference the allegations of paragraphs

6  1 through 50 as though fully set forth herein.

7       52.    Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil

8  Procedure 57, and in light of the fact that there is a controversy between Plaintiff

9  and Defendants with respect to the ownership of the Axial assets, and the AL 13

10  brand, its associated trademarks, designs and logos including, but not limited to '342

11  Mark.

12       53.    Plaintiff Axial has alleged that Darwin Wongkar developed the AL13

13  brand, its associated trademarks, designs and logos, etc.  To the extent Defendant

14  Corales did anything at all it was while he was a paid at-will employee of Axial,

15  using his working hours, Darwin's company's resources, equipment and supplies.

16  Corales developed this intellectual property, e.g. the AL13 brand, associated

17  trademarks, designs and logos while he was an at-will employee.  Defendants hold

18  no ownership interest in Axial.

19       54.    The domain name "AL13Wheels.com" and an Instagram account

20  having a domain name "instagram.com/all3wheels" were created by Axial for the

21  purpose of marketing and selling Axial's AL13 wheel brand across state lines and

22  internationally. As such, Axial uses the mark AL 13 Wheels in interstate commerce,

23  and by establishing itself as the manufacturer of high-end custom-made wheels

24  under the AL13 brand, achieving global notoriety.

25       55.    Further, on February 8, 2024, Axial acquired the senior AL13

26  trademark '635 Registration and the USPTO issued a Denial Letter against the '342

27

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 873-0504

1 Mark which Corales had filed purportedly on behalf of Axial.  And on May 14, 2024,

2 the USPTO issued a Suspension Notice on the '342 Mark.  *See* Exhibits K and L.

3      56.      Defendants have seized other property belonging to Axial, including,

4 but not limited to intellectual property of Axial, along with programming, designs,

5 tooling, fixtures, customer lists, Instagram, website, email, Dropbox, and Axial's

6 AL13 '635 Registration.

7      57.      Plaintiff respectfully requests this Court to declare Axial the rightful

8 owner of the AL13 brand, all of its associated trademarks, including both the '635

9 Registration and the '342 Mark and that this Court order the Defendants to return all

10 property belonging to Axial; cease all use of the AL13 trademarks; and strike the

11 transfer filing made by Defendants, including Defendant Corales, as November 29,

12 20203, to Dave Batarseh and WheelImage.

## FIFTH CLAIM FOR RELIEF

### (For Cyberpiracy in Violation of 15 U.S. CODE § 1125(d))

15      58.      Plaintiff incorporates by reference the allegations of paragraphs 1

16 through 57 as though fully set forth herein.

17      59.      As laid out more fully above, Defendants intentionally accessed the

18 website administration of AL13wheels.com and changed access credentials to

19 prevent Plaintiff from accessing and using this valuable domain. Then, Wrigley

20 regained rightful access to AL13wheels.com for WheelImage.

21      60.      Additionally, on information and belief Defendants have used

22 AL13wheels.com and the AL13 Instagram account to profit from the AL13 brand,

23 trademarks, and marks in order to profit from these marks. As can be readily

24 appreciated, an online presence is a key marketing, sales, and business tool in the

25 modern world where many consumers do not even trust companies if they do not

26 maintain a reputable online presence.

27

COMPLAINT FOR DAMAGES

61.     When determining bad faith intent, 15 USC 1125(d) lays out enumerated factors for consideration. Defendants have shown their bad faith under the following enumerated factors:

a.     They have no right to the AL13 brand, trademarks, and marks which are rightfully owned by Axial. In fact, as laid out above, Defendants do not own the AL13 brand, trademarks, and marks and does not have rightful use of the AL13wheels.com domain or AL13 Instagram account, or any other Axial proeperty. As such, factor 15 USC 1125(d)(1)(B)(i)(II), weighs heavily for Plaintiff Axial.

b.     Defendants have wrongfully accessed and taken control of the AL13wheels.com domain and AL13 Instagram account. On information and belief, they continue to use and access these in order to divert customers away from Axial's websites and access to harm the goodwill of the AL13 brand, trademarks, and marks for commercial gain. Furthermore, Defendants have reached out to customers / vendors inappropriately claiming rightful use of the AL13 brand, trademarks, and marks which has created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the AL13 brand, trademarks, and marks and the above domains. Also, on information and belief Defendants have done this for an entirely commercial purpose not for any noncommercial or fair use. As such, factor 15 USC 1125(d)(1)(B)(i)(V), weighs heavily for Axial.

62.     As such, Defendants aided WheelImage with a bad faith intention to profit from the AL13 brand, trademarks, and marks.

63.     Furthermore, as laid out above, Defendants have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) to sell products. As such,

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (415) 877-5054

Defendants have trafficked in and used the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) for commercial use.

64.     As such, Defendants have violated 15 USC 1125(d) and Axial is entitled to an order from the Court to protect the AL13wheels.com domain, the AL13 Instagram account, and any other domains and accounts created that are derivative of the AL13 brand, trademarks, and marks.

65.     By preventing Plaintiff from controlling the AL13 Instagram account, Defendants are aiding WheelImage and preventing Plaintiff Axial from enjoying $6,000,000 worth of annual sales, which represents $1,500,000 of profit for Plaintiff Axial.

## SIXTH CLAIM FOR RELIEF

### (For Dilution of Famous Mark Pursuant to 15 U.S. CODE § 1125(c))

66.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 65 as though fully set forth herein.

67.     As laid out above, Axial is the rightful owner of the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account). It should be understood that the high-end vehicle wheel industry is a small world. This is partly because these wheels are intended to be used on various luxury cars such as Ferrari, Lamborghini, Porsche, McLaren, and various others. These are inherently luxury items that are paired with other high end luxury items. As such, reputation and word of mouth are vitally important and it's a very small world of customers that can afford and purchase such items. Despite this, AL13 has managed to accumulate a significant following and brand in this small world. This can clearly be seen in its AL13 Instagram account which has at least 400,000 followers.

68.     While 400,000 followers may not seem a huge audience when viewed against the entire consuming public of the United States, it is still a significant following inside this microcosm of high-end vehicle wheels. Based on this

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0561

accumulated reputation, AL13 brand, trademarks, and marks are famous and distinctive.

69. As laid out above, after the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) had already become famous by the time Defendants inappropriately accessed and took control of the AL13wheels.com domain and the AL13 Instagram account.

70. Furthermore, as laid out above, Defendants have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) in commerce and this use is likely to cause dilution by blurring or tarnishment of this famous mark.

71. Additionally, on information and belief Defendants cannot claim any form of fair use and do not engage in any noncommercial use as their use is entirely devoted to diverting sales and customers from Axial to WheelImage by Defendants. Also, Defendants are entirely aware of how famous the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) are in this industry and on information and belief willfully intended to trade on that reputation.

72. As such, Defendants have violated 15 USC 1125(c) and Axial is entitled to an injunction from the Court to stop such inappropriate use. Furthermore, Axial is entitled to disgorgement of profits made by Defendants in an amount to be determined at trial after an accounting, payment of Axial's damages for the inappropriate use, and costs of this suit.

**SEVENTH CLAIM FOR RELIEF**

**(For False Designation of Origin Pursuant to 15 U.S. CODE § 1125(a))**

73. Plaintiff incorporates by reference the allegations of paragraphs 1 through 72 as though fully set forth herein.

74. Defendants aided WheelImage in accessing and taking control of the AL13wheels.com domain and the AL13 Instagram account. On information and

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 978-0264

belief, Defendants have and continue to use these marks for WheelImage's commercial use and profit in commerce. Furthermore, Defendants continued inappropriate use of the AL13 brand, trademarks, and marks is a false designation of origin and misrepresentation as they are owned by Axial and are inappropriately used without permission.

75.     Furthermore, Defendants have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) in commerce and this use is likely to cause confusion and mistake as customers and vendors will believe that Defendants have permission to use such marks when they are in fact owned by Axial.

76.     Further, this will cause confusion, deception, and mistake that these Defendants are allowed to sell the AL13 brand, trademarks, and marks when this use is not permitted. This will also cause confusion, deception, and mistake that these Defendants are affiliated with the AL13 brand when this is not true. This will also cause confusion, deception, and mistake that Defendants' products originate, are sponsored by, or are approved by the AL13 brand when this is not true.

77.     Also, as laid out above, Defendants have inappropriately taken control of AL13wheels.com and the AL13 Instagram account. On information and belief, they have and continue to use these online avenues to market and sell products in commerce. They also use them for commercial advertising and promotion in commerce. As such, Defendants are also misrepresenting the nature, characteristics, and geographic origin of these goods by claiming they are authorized AL13 brand products when they are not.

78.     As such, WheelImage is damaged in an amount $27,000,000 at trial after an accounting.

///

///

COMPLAINT FOR DAMAGES

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 973-0764

## EIGHTH CLAIM FOR RELIEF

### (For Infringement of California Common Law Trademark)

79.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 78 as though fully set forth herein.

80.   Since October 2017, Corales was the first to use the mark "AL13 wheels" in interstate and international commerce under the direction of Wongkar. Now, WheelImage (Corales' employer who purchased the mark from him) is manufacturing wheels under the AL 13 Wheels common law trademark.

81.   Corales served as a manager of Axial since October 2017. His primary responsibility was to ensure that the production of AL13 wheels adhered to the stringent quality assurance standards set by Axial.

82.   On November 17, 2023, Corales, while an employee of Axial, attempted to assign the title, right and interest in the AL13 brand to WheelImage without express or implied authority of Decedent or Plaintiff.

83.   WheelImage continues to manufacture wheels under the AL13 brand, thus causing confusion to the public as to the origin because WheelImage purchased and is using the exact same mark that is owned by Plaintiff Axial.

84.   Such likelihood of confusion is severe because the Defendant's counterfeit mark cannot be distinguished from Plaintiff's legitimate mark.

85.   Such confusion is causing irreparable harm to Plaintiff's mark because Defendants do not have access to the engineering support needed to ensure the consistently high product quality associated with the AL13 Wheels trademark.

## NINTH CLAIM FOR RELIEF

### (For Intentional Interference With Prospective Economic Advantage)

86.   Plaintiff by reference the allegations of paragraphs 1 through 85 as though fully set forth herein.

COMPLAINT FOR DAMAGES

87.     As heretofore alleged, Defendants, and all of them, knew, and understood clearly from Plaintiff Axial representations, and that Wrigley Corales does not have authority to assign all the right, title, and interest in the AL13 Intellectual Property to WheelImage, and was in their employ.

88.     The economic relationship, established with the aim of enhancing market share and profitability for Plaintiff Axial, was well understood by all Defendants. They were aware that Axial's business was specifically designed to expand their market presence in the auto industry. This strategy involved the integration of an additional brand to diversify their offerings, which included a variety of wheel brands, thereby broadening their customer base.

89.     The Defendants, collectively and individually, intentionally engaged in actions aimed at disrupting the relationship between Axial and VF Engineering. They disseminated defamatory information with the intent or knowledge that it would undermine the economic relationship between Axial and VF Engineering. They were aware that their actions would inflict harm and damage this relationship, causing direct harm to Axial and its Estate.

90.     The Defendants acted deliberately and maliciously. They not only knew but had also confirmed in writing their intent to steal the AL 13 Intellectual Property from Axial. This occurred just weeks before Corales' unlawful assignment of those same intellectual property rights to Defendant WheelImage. The Defendants' actions were a direct retaliation for this. They then sent an email that misrepresented the true ownership of the AL13 brand. The continuous misrepresentation has caused significant disruption to the business operations of Plaintiff Axial. It has damaged Axial's economic relationships with potential buyers of the company. Existing customers have expressed their surprise, confusion, and discomfort upon receiving numerous false statements and communications.

COMPLAINT FOR DAMAGES

91.     The Defendants' conduct and actions have directly led to all the damages Plaintiff Axial has suffered and will continue to suffer. This willful, malicious, and nefarious behavior was carried out with full knowledge and reckless disregard for the reputational and financial harm that Axial and the Estate would endure.

## **TENTH CLAIM FOR RELIEF**

### **(For Conversion With Damages Pursuant to Cal. Penal Code § 496(c))**

92.     Plaintiff Axial incorporates by reference the allegations of paragraphs 1 through 91 as though fully set forth herein.

93.     Plaintiff Axial allege that it owns the entire title, interest and rights to the AL 13 brand including the right to possess and control two domain names including "AL13wheels.com" and the Instagram account accessible by way of the domain name "instagram.com/all3wheels."

94.     Defendants substantially interfered with Plaintiff's property by knowingly and intentionally by preventing Plaintiff from having access and control over these two domain names including "AL13wheels.com" and the Instagram account accessible by way of the domain name "instagram.com/all3wheels."

95.     Defendants continued to interfere with Plaintiff Axial's exclusive access and control over its two domain names including "AL13wheels.com" and the Instagram account accessible by way of the domain name: "instagram.com/all3wheels."

96.     Plaintiff did not consent to the takeover of these two domain names, "AL13wheels.com" and "instagram.com/all3wheels", by Defendants and their misrepresentation to the public of the ownership.

97.     The conduct of Defendants was a substantial factor in the harm suffered by Plaintiff Axial and the Estate in the form of lost sales, which could not be realized because of the cyberpiracy targeting:

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

"ALI3wheels.com" and "instagram.com/all3wheels."

98.     Defendants deliberate hijacking of these domains, with no intention of returning them to their rightful owner (Axial), constitutes wanton, willful, and intentional conduct. This supports Plaintiff Axial's request for treble damages, cost of suit, and reasonable attorney fees, in accordance with Cal. Penal Code Section 496(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For compensatory damages in an amount to be proven in trial;

2.     For general and special damages in a sum of $7,000,000.00 or according to proof at the time of trial,

3.     For punitive and exemplary damages in the amount of $20 Million or as appropriate to punish and set an example of Defendants;

4.     For the issuance of a preliminary and permanent injunction enjoining Defendants from disseminating and/or using Axial's business property described herein in any way;

5.     For all costs incurred by Plaintiff to date and to be incurred by Plaintiff hereafter in connection with this action; and

6.     For attorneys' fees and costs allowable by statute against the Defendants; and

7.     For any and all other relief as the Court may deem just and proper.

Dated July 1, 2024.          Respectfully submitted,

PALMER LAW GROUP, a PLC

By: _____ .

William W. Palmer

*Attorneys for plaintiff Axial Manufacturing, Inc.*

PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a trial by jury.

3    Dated: July 1, 2024               PALMER LAW GROUP, a PLC

4

5

6                                      By:_____.

7                                         William W. Palmer

8                                      *Attorneys for plaintiff Axial Manufacturing, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT FOR DAMAGES